#25536, #25902-aff in pt & rev in pt-JKK

**2012 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

(#25536)
IN RE: POOLED ADVOCATE TRUST

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEFF W. DAVIS
Judge

BECKY A. JANSSEN
Special Assistant Attorney General
Pierre, South Dakota                    Attorneys for appellant South
                                        Dakota Department of Social
                                        Services.


THOMAS E. SIMMONS of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                Attorneys for appellee Pooled
                                        Advocate Trust, Inc.

-------------------------------------------------------------------------------------------------------------

(#25902)

FRED MATTHEWS and
GLADYS MATTHEWS,                         Appellants,

v.

SOUTH DAKOTA DEPARTMENT
OF SOCIAL SERVICES,                      Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANINE M. KERN
Judge

KRISTI VETRI
Belleville, Illinois

Attorney for appellants Matthews.


BECKY A. JANSSEN
Special Assistant Attorney General
Pierre, South Dakota

Attorneys for appellee South
Dakota Department of Social
Services.

ARGUED ON JANUARY 10, 2012

OPINION FILED **03/28/12**

#25536, #25902

KONENKAMP, Justice

[¶1.]        Pooled Advocate Trust, Inc. (PATI), the managing corporation for a Medicaid pooled trust, brought a declaratory judgment action on Medicaid eligibility issues associated with the trust and named the South Dakota Department of Social Services (DSS) as a necessary party.  The circuit court granted summary judgment and declaratory judgment for PATI.  Fred Matthews and Gladys Matthews transferred assets to the pooled trust.  When Fred and Gladys subsequently applied for Medicaid long-term care benefits, DSS imposed a penalty period because they were over age 65 at the time of the transfers.  After DSS notified PATI of this policy, PATI petitioned for further relief, seeking a declaration that DSS could not impose penalty periods for transfers made by pooled trust beneficiaries age 65 or older.  The circuit court granted PATI's petition.  In addition, Fred and Gladys appealed DSS's application of a penalty period, but an administrative law judge (ALJ) upheld the decision and another circuit court affirmed the ALJ's ruling.  DSS appeals Circuit Court Judge Jeff W. Davis's order granting PATI's petition for further relief (Appeal #25536).  Fred and Gladys appeal Circuit Court Judge Janine M. Kern's affirmance of the ALJ's ruling (Appeal #25902).

### Declaratory Judgment

[¶2.]        PATI is a nonprofit, South Dakota corporation created to manage the Pooled Advocate Trust dated October 28, 2004 (trust or pooled trust).  An irrevocable trust created for the benefit of disabled South Dakota residents, the trust was established in an attempt to meet Medicaid's criteria for pooled trusts

-1-

under 42 U.S.C. § 1396p(d)(4)(C). Great Western Bank of Rapid City, South Dakota is the trustee.

[¶3.] To join the trust, a potential beneficiary completes a joinder agreement and application and pays a one-hundred-dollar fee. If the application is approved, the beneficiary's transfers are attributed to a trust sub-account that remains separate from other beneficiaries' sub-accounts. Funds from the sub-accounts are comingled for investment and management purposes. During a beneficiary's lifetime, the trustee may distribute funds to supplement the beneficiary's needs to the extent that Medicaid or other programs do not provide for them.

[¶4.] In November 2004, after executing a declaration of trust, PATI petitioned for court supervision of the trust under SDCL 21-22-9. The circuit court granted the petition and entered an order assuming supervision over the trust. At the time, the trust had no beneficiaries and was funded with one dollar.

[¶5.] On the same day the court granted the petition for supervision, PATI brought an action for declaratory judgment. PATI named DSS as a necessary party and sought the following relief: (1) a final judgment and decree that the trust complies with federal and state law regarding Medicaid pooled trusts and that beneficiaries' transfers of assets or property to the trustee will not constitute transfers for purposes of Medicaid eligibility; (2) a final judgment and decree that the trust assets will not be considered an income resource available to beneficiaries for purposes of Medicaid eligibility; (3) a final judgment and decree that the income generated by the trust will not be considered an income resource available to beneficiaries for purposes of Medicaid eligibility; and (4) a final judgment and

decree that DSS cannot claim a lien against the assets, property, or income of the trust by virtue of Medicaid benefits provided to the beneficiary except where a beneficiary's sub-account is not retained by the trust. DSS answered, alleging that PATI failed to state a claim upon which relief may be granted.

[¶6.] In June 2005, PATI and DSS stipulated to the filing of cross motions for partial summary judgment. PATI and DSS disputed the legality of certain trust provisions concerning the disposition of sub-account funds following the death of a beneficiary. The parties reserved any other issues not addressed by the cross motions for summary judgment. After briefing, the court ruled for DSS. It concluded that DSS must be reimbursed from a deceased beneficiary's sub-account before funds are distributed to the South Dakota Community Foundation but that funds from the sub-account may be placed back into the trust for the remaining trust beneficiaries. The court ordered reformation of the trust so that it would conform to the court's decision.

[¶7.] In November 2005, PATI moved for summary judgment and declaratory judgment. PATI asserted that the court had essentially ruled on the merits of PATI's complaint and that the only remaining contested issues were whether the complaint stated a claim upon which relief may be granted and whether PATI had standing to bring the declaratory judgment action. In March 2006, PATI and DSS stipulated to the granting of PATI's motions. Accordingly, the court granted PATI summary judgment and declaratory judgment in April 2006. The court ordered that "the trust, as reformed, complies with the law, that transfers to the trust will not be penalized for Medicaid eligibility purposes so long as a

beneficiary meets the requirements set forth in the trust as reformed,[1] and that amounts in a Trust Sub-Account will not be considered available resources for Medicaid eligibility purposes." At this time, the trust still had no beneficiaries.

[¶8.]    Fred, age 91, and Gladys, age 89, husband and wife, both disabled, entered a nursing home in February 2009. A few months later, Fred and Gladys sold their home to their daughter for $100,000, with an initial payment of $50,000. The couple deposited the money into their joint bank account. Fred's monthly income totaled $5,677, comprised of social security benefits, veteran's benefits, and pension proceeds. At that time, an individual with a monthly income exceeding $2,022 was ineligible for certain Medicaid benefits. Because Fred's monthly income exceeded the Medicaid limit, Fred established a Medicaid income trust. Medicaid income trusts allow individuals with monthly incomes exceeding the Medicaid limit to place the income into a trust, subject to certain conditions, to avoid Medicaid ineligibility. Fred created this income trust by removing Gladys's name from their joint bank account. Fred later deposited $8,618.05, the proceeds from his life insurance policy, into his Medicaid income trust because the cash surrender value of a life insurance policy was considered a countable resource for Medicaid eligibility purposes.

[¶9.]    In June 2009, Fred and Gladys applied for sub-accounts with the pooled trust, and PATI granted their applications. Fred transferred $50,200 from

---

1.    Under the declaration of trust, there are only two requirements to become a trust beneficiary. A potential beneficiary must be: (1) disabled; and (2) a South Dakota resident. The pooled trust does not impose an age requirement or limit.

his Medicaid income trust to PATI. PATI distributed half the funds to Fred's pooled trust sub-account and the other half to Gladys's pooled trust sub-account. Fred later deposited his life insurance policy cash proceeds from his Medicaid income trust into his pooled trust sub-account. In addition, Gladys deposited $6,000 from her savings account into her pooled trust sub-account.

[¶10.]    In September 2009, Fred and Gladys separately applied for Medicaid long-term care benefits. While their applications were pending, they received the remaining proceeds from the sale of their home, $50,883.57. They divided the proceeds equally and deposited the funds into their separate pooled trust sub-accounts. Thus, between June and September 2009, Fred and Gladys deposited a total of $115,701.62 into the pooled trust.

[¶11.]    On October 9, 2009, DSS issued a notice of action to Fred indicating that his application for Medicaid assistance had been denied because "funds deposited into [his Medicaid income trust] have been used for a purpose that exceeded the authorized purposes for which funds can be distributed from the trust under Medicaid rules and under the terms of the trust itself."[2]  Given this, DSS deemed Fred's Medicaid income trust a non-qualifying trust and any income placed into that trust was countable income for Medicaid eligibility purposes. Because DSS counted all income and resources associated with Fred's Medicaid income trust, Fred's income and resources exceeded Medicaid's eligibility limits.

---

2.    DSS denied Fred's application for Medicaid assistance because he did not follow the conditions placed on his Medicaid income trust. The decision was not directly based on Fred's participation in the pooled trust.

[¶12.]　　　On November 5, 2009, DSS issued a notice of action to Gladys indicating that she was eligible for medical-only benefits (which does not cover nursing home care) but not for long-term care benefits. DSS advised Gladys that due to the transfers of assets to the pooled trust of $115,701.62, Gladys was subject to a Medicaid transfer penalty period during which DSS would not pay Gladys's long-term care costs.[3] DSS noted that the penalty period would end October 1, 2011, and Gladys may thereafter be eligible for long-term care assistance. Both Fred and Gladys requested administrative hearings to challenge these decisions. The hearings were scheduled for December 2009.

[¶13.]　　　A few days after Gladys received her notice of action from DSS, on November 9, 2009, DSS informed PATI via email that DSS "has determined that transfers to a pooled trust by an individual age 65 or older will be treated as a transfer for less than fair value for Medicaid eligibility purposes." The next day, PATI petitioned for further relief on declaratory judgment under SDCL 21-24-12. PATI asserted that the doctrine of res judicata and the 2006 judgment barred DSS from imposing an age limitation, because in 2006 the court ordered that transfers to the trust would not be penalized for Medicaid eligibility purposes. PATI also asserted that the relevant Medicaid statutes do not impose an age restriction for transfers to the pooled trust for purposes of Medicaid eligibility and that a pooled trust may be funded by beneficiaries of any age. PATI asked the court to require DSS to show cause why the relief requested should not be granted.

---

3.　　　DSS's decision regarding Gladys's application for Medicaid assistance was directly based upon Gladys's participation in the pooled trust.

[¶14.] The circuit court entered an order to show cause and set a hearing on PATI's petition for further relief. The trustee submitted an affidavit indicating that the trust currently had seventeen beneficiary sub-accounts and a market value of approximately $1,650,000. The trustee also stated that three sub-accounts were funded after the beneficiary had reached age 65. The court held a hearing on PATI's petition for further relief on December 14, 2009. At the hearing, DSS mentioned a United States Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS) policy regarding pooled trust transfers by individuals over age 65. CMS is the federal agency responsible for administering and overseeing federal Medicaid standards. PATI argued that the age limitation issue was already decided in the 2006 proceedings. The court granted PATI's petition for further relief. It "barred [DSS] from imposing a Medicaid divestment penalty based on a beneficiary's age at the time a beneficiary funds a sub-account with the [pooled trust] for that beneficiary's benefit." The court's order also stated:

> Having determined that this matter involves issues previously adjudicated, the Court does not reach any analysis of federal Medicaid eligibility law. This Court refrains from issuing any specific ruling as to the Medicaid eligibility of any particular trust beneficiary because determinations on whether or not an individual qualifies for assistance under the South Dakota Medicaid Program are to be made by the Department, consistent with this order and applicable law, and no individual Medicaid applicant's eligibility is properly before this Court.

The court did not issue findings of fact or conclusions of law. In a letter to DSS and PATI regarding the order, the court again stated that "the 65 years of age is not relevant to PATI transfers" and that the court "refrained from issuing any specific

ruling as to Medicaid eligibility of any particular trust beneficiary. Those decisions are to be made by the Department under the South Dakota Medicaid Program."

[¶15.]     DSS moved the court to reconsider its order and filed a brief in support. It discussed and attached a copy of a 2008 CMS memorandum. In part, the memorandum stated that "only trusts established for a disabled individual 64 or younger are exempt from application of the transfer of assets penalty provisions." The memorandum explained that "[i]f States are allowing individuals age 65 or older to establish pooled trusts without applying the transfer of assets provisions, they are not in compliance with the statute. [F]ederal statute requires the application of the transfer rules in this situation; it [is] not a decision for each State to make." DSS argued that this memorandum demonstrated the mandatory nature of the penalty periods.

[¶16.]     PATI filed a responsive brief, but DSS filed its notice of appeal on January 22, 2010, before the circuit court could rule on DSS's motion to reconsider. DSS appeals the circuit court's December 2009 order granting PATI's petition for further relief. This Court stayed DSS's appeal until Fred and Gladys exhausted their administrative remedies.

**Administrative Appeal**

[¶17.]     Fred's and Gladys's cases were joined and an administrative hearing was held in February 2010. Before the hearing, Gladys provided the ALJ with a copy of the circuit court's December 2009 order and DSS provided a copy of the 2008 CMS memorandum. Fred and Gladys urged the ALJ to consider the declaratory orders. But despite these orders, the ALJ upheld DSS's imposition of a Medicaid

transfer penalty period on Gladys, concluding that the transfers made by Fred and Gladys, who were both over 65 at the time of the transfers, subjected them to the transfer penalty. The ALJ's opinion did not refer to the declaratory judgment action and relied primarily on the CMS memorandum. Fred and Gladys appealed the ALJ's ruling to the circuit court.

[¶18.]    Judge Kern issued a memorandum decision, concluding that Fred waived his right to appeal DSS's imposition of a transfer penalty because he originally challenged DSS's notice of action, which indicated only that his Medicaid income trust was being inappropriately used and did not refer to the transfer penalty. Although the ALJ's decision on Fred's Medicaid eligibility was based on the improper transfer of assets to the pooled trust, Fred did not challenge the subsequent transfer penalty for his transfers to the pooled trust.

[¶19.]    As to Gladys, Judge Kern affirmed the ALJ's ruling and stated that "[b]oth the federal and state statute allow for the imposition of a long-term care eligibility penalty for the *transfer* of assets for less than fair-market value within the statutory period when the benefited individual was not under age 65 at the time of the transfer, and the fact that such a transfer took place is not in dispute." Fred and Gladys appeal the circuit court's affirmance of the ALJ's ruling upholding DSS's imposition of a Medicaid penalty period.

## Decision on Declaratory Judgment Appeal

### 1. Standard of Review

[¶20.]    Because there is some disagreement, we first address the applicable standards of review. In the appeal on the 2009 declaratory order, DSS asserts that

the de novo standard of review applies as it does in all declaratory judgment actions. PATI responds that the abuse of discretion standard of review should apply because DSS is challenging an order granting further relief on a declaratory judgment action, not the final declaratory judgment.[4] "This Court reviews declaratory judgments as we do any other order, judgment, or decree" giving no deference to a circuit court's conclusions of law under the de novo standard of review. *Fraternal Order of Eagles No. 2421 of Vermillion v. Hasse*, 2000 S.D. 139, ¶ 8, 618 N.W.2d 735, 737 (citing SDCL 21-24-13). Although granting further relief in a declaratory judgment action is permissive rather than mandatory, *see* SDCL 21-24-12, the circuit court was answering a question of law in interpreting its prior order, thus our review is de novo. Jurisdiction, res judicata, and statutory interpretation are also questions of law examined under the de novo standard of review. *O'Neill Farms, Inc. v. Reinert*, 2010 S.D. 25, ¶ 7, 780 N.W.2d 55, 57; *W. Consol. Coop. v. Pew*, 2011 S.D. 9, ¶ 20, 795 N.W.2d 390, 396; *Farmer v. S.D. Dep't of Revenue and Regulation*, 2010 S.D. 35, ¶ 6 n.4, 781 N.W.2d 655, 659 n.4.

### 2. Issue Preclusion: Res Judicata and "Law of the Case"

[¶21.]     PATI argues that the doctrine of res judicata bars DSS's attempt to litigate the age limitation issue: DSS already litigated that issue in the 2006 proceeding and DSS could have litigated the issue in the 2009 proceeding. First, PATI notes that the circuit court ruled that PATI's petition for further relief "involve[d] issues previously adjudicated[.]" PATI contends that "the issue of

---

4.     PATI cites *Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 190 (Tex. App. 2005) to support this argument.

whether long term care Medicaid eligibility for Trust beneficiaries can be restricted based on beneficiaries' age is identical to the issues addressed in the prior adjudication which led to the issuance of the judgment." Then, PATI argues that "[a]lthough [DSS] did not specifically advance an argument that it could impose Medicaid transfer penalties on older beneficiaries of the Trust [in the 2006 proceeding], it knew that it could have advanced that argument because it referred to the issue in a brief filed with the Court."[5] Alternatively, PATI asserts that the "law of the case" doctrine bars DSS's litigation of the age limitation issue.

[¶22.] DSS responds that res judicata does not apply because the circuit court lacked subject matter jurisdiction "to issue any order which has the effect of determining Medicaid eligibility and which allows individuals to bypass DSS and administrative procedures to obtain Medicaid eligibility." DSS argues that Fred and Gladys avoided the obligation to exhaust their administrative remedies because the circuit court improperly ruled on the relevant eligibility issues for them. DSS also argues that the court's orders wrongly shifted the burden of proof because the orders required DSS to show why beneficiaries do not qualify for Medicaid

---

5. Specifically, PATI refers to DSS's brief in support of summary judgment filed on July 22, 2005. The 2005 summary judgment proceeding addressed only the parties' dispute over the trust provision regarding funds remaining upon a beneficiary's death (i.e., transfers to the trust and Medicaid eligibility were not at issue). In this brief, DSS differentiated special needs trusts and pooled trusts under Medicaid law. In doing so, DSS stated that "[u]nder the pooled trust provision, if the beneficiary is 65 or older there may be transfer penalties." PATI argues that this statement demonstrates that DSS knew of its age limitation argument and could have asserted it in the 2006 proceedings.

assistance when state law places the burden on an applicant to prove eligibility for such assistance.

[¶23.]    Res judicata generally bars not only attempts to relitigate matters actually litigated, but also all other matters that should have been asserted in the earlier proceeding. *In re Estate of Siebrasse*, 2006 S.D. 83, ¶ 16, 722 N.W.2d 86, 90. The "law of the case" doctrine, on the other hand, stands for the general rule that "a question of law decided by the supreme court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed on a second appeal when the facts and the questions of law presented are substantially the same." *Id.* "The 'law of the case' doctrine is the weaker corollary of the doctrines of res judicata, collateral estoppel[,] and stare decisis and is intended to prove some degree of certainty where those doctrines could not yet apply." *Id.*

[¶24.]    As we previously noted:

> Although the principles of the law of the case doctrine and res judicata are similar, their application differs. The law of the case rule involves the effect of a previous ruling within one action on a similar issue of law raised subsequently within the *same* action. The rules of res judicata apply to previous rulings in an action on a similar determination in a *subsequent* action.

*Id.* Thus, "[w]here successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved." *Id.*

[¶25.]    This case does not involve successive appeals. But PATI claims that the circuit court's 2006 order bars DSS's litigation of the age limitation issue and DSS's appeal of the 2009 order. The 2006 and 2009 orders were issued in the same

declaratory judgment action. Therefore, because this case does not involve the preclusive effect of a previous ruling in a subsequent action, we employ the "law of the case" doctrine rather than res judicata.

[¶26.] "The 'law of the case' doctrine is intended to afford a measure of finality to *litigated issues*." *Grynberg Exploration Corp. v. Puckett,* 2004 S.D. 77, ¶ 21, 682 N.W.2d 317, 322. This doctrine has many policy considerations: "(1) to protect settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *In re Estate of Jetter*, 1999 S.D. 33, ¶ 20, 590 N.W.2d 254, 258. We have cautioned, however, that "the 'law of the case' [doctrine] should not be used to perpetuate an erroneous decision[.]" *Grynberg*, 2004 S.D. 77, ¶ 21, 682 N.W.2d at 322. Indeed, the doctrine "is not a rigid rule, and will not be invoked on a second appeal if the prior decision is palpably erroneous and if it is competent for the court to correct it on the second appeal." *Siebrasse*, 2006 S.D. 83, ¶ 17, 722 N.W.2d at 91. Furthermore, "a court may reopen a previously resolved question if the evidence on remand is substantially different or if a manifest injustice would otherwise result." *Id.*

[¶27.] In this case, the narrow question whether beneficiaries age 65 or older will be subject to a penalty period as a result of transfers to a pooled trust was not decided in the circuit court's 2006 ruling. Although the court ordered that "transfers to the trust would not be penalized for Medicaid eligibility purposes," this broad ruling did not directly address age limitations. Still, there is merit in PATI's

argument that DSS knew of the age limitation issue in 2006 because DSS mentioned the policy in a 2005 brief. Yet the trust had no beneficiaries at that time. With no particular individual beneficiary and accompanying Medicaid eligibility concern presented to the court, the issue was not fully and fairly litigated. In addition, the 2008 CMS memorandum made the mandatory nature of the transfer penalties more apparent. In that memorandum, CMS warned that states must apply the penalty periods to pooled trust transfers made by beneficiaries age 65 or older or risk noncompliance with federal Medicaid law. The 2008 memorandum warranted a new examination of the court's ruling regarding transfers to the pooled trust for Medicaid eligibility purposes. Unfortunately, the circuit court did not have the opportunity to consider this memorandum because the appeal by DSS stayed further proceedings.

[¶28.] Accordingly, we do not apply the "law of the case" doctrine here because its application would not serve the doctrine's many policy considerations. The narrow Medicaid eligibility issue before us today was not previously decided in 2006. And the 2008 CMS memorandum may constitute new evidence supporting DSS's penalty period policy. Judicial economy, finality, certainty, and uniformity cannot outweigh the interests of justice in this case because, as we explain in detail below, the unambiguous language of the relevant statutes supports DSS's imposition of a penalty period for transfers made by pooled trust beneficiaries age 65 or older.

[¶29.] Two other concerns also bear on our decision not to apply the "law of the case" doctrine. First, under the South Dakota Medicaid Program, Medicaid

eligibility is determined in the first instance by DSS. Not only did the circuit court rule on issues affecting Medicaid eligibility, but the court also required DSS to make all future eligibility decisions "consistent with [its 2009] order and applicable law." Thus, while the court was not ruling on Medicaid eligibility for a specific beneficiary, the court was effectively making future individual Medicaid eligibility decisions. Yet the unambiguous language of the applicable statutes demonstrates that DSS cannot make Medicaid eligibility decisions consistent with both the circuit court's 2009 order and applicable law because the statutes require penalty periods and the court order prohibits penalty periods.

[¶30.]     Second, while the 2009 order did not involve individuals directly appealing agency decisions (i.e., Fred and Gladys did not directly appeal to the circuit court), PATI filed its petition for further relief immediately after DSS imposed a penalty period on Fred and Gladys, seeking a general declaration that DSS cannot apply penalty periods based on age. PATI's petition for further relief asked the circuit court to rule, and the court did rule, on the specific Medicaid eligibility issue that Fred and Gladys were appealing to the ALJ. Indeed, had the ALJ honored the court's order granting further relief, Fred's and Gladys's administrative appeal would have been prematurely decided by the circuit court.

[¶31.]     We do not ignore PATI's competing policy arguments. PATI's lawyers acted proactively, doing everything possible to arrange a trust for the benefit of its future beneficiaries by seeking court supervision and filing a declaratory judgment action. DSS, by stipulation and inaction, led PATI to believe that it could represent to its beneficiaries age 65 or over that they could permanently divest themselves of

assets without jeopardizing their Medicaid eligibility. While this is also a form of injustice, we conclude that it does not outweigh our interest in reaching the correct legal conclusion.[6]

### 3. Statutory Analysis

[¶32.] When interpreting a statute, we "begin with the plain language and structure of the statute." *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 163.

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed.

*Id.* ¶ 5.

[¶33.] The United States Congress enacted Medicaid in 1965. *Mulder v. S.D. Dep't of Soc. Servs.*, 2004 S.D. 10, ¶ 7, 675 N.W.2d 212, 215. "Medicaid is a cooperative State and Federal program designed to provide health care to needy individuals." *Id.* If states choose to take part in the Medicaid program, "they must

---

6. Res judicata and the "law of the case" doctrine are supported by nearly identical policy considerations. *See Brown v. Felsen*, 442 U.S. 127, 132, 99 S. Ct. 2205, 2209, 60 L. Ed. 2d 767 (1979); *see also Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2006 S.D. 72, ¶ 15, 720 N.W.2d 655, 660. Even if the orders here had occurred in separate actions, we would not apply res judicata for many of the same reasons we do not apply the "law of the case" doctrine, specifically because it would not serve the doctrine's policy considerations and would defeat the ends of justice.

develop a State plan that complies with the Federal Medicaid act and its regulations." *Id.* South Dakota participates in the Medicaid program and charges the Secretary of DSS "with the responsibility of promulgating rules to determine eligibility and the extent of benefits available to applicants." *Id.* (citing SDCL 28-6-1 and 28-6-3.1). These rules can be found in the Administrative Rules of South Dakota (ARSD) Title 67, Article 46. *Id.*

[¶34.] Long-term care assistance is an optional category of Medicaid coverage. 42 U.S.C. § 1396a(a)(10)(A)(ii)(V). South Dakota elected to provide long-term Medicaid coverage. ARSD 67:46:01:02(6). To determine eligibility for long-term care assistance, DSS is required to review an applicant's income and resources. ARSD 67:46:02:03. DSS must also determine whether an applicant has transferred any assets within a look-back period. 42 U.S.C. § 1396p(c); ARSD 67:46:05:06. If an applicant has transferred assets for less than fair market value during that time, he or she may be ineligible for Medicaid long-term care assistance for a certain penalty period. 42 U.S.C. § 1396p(c); ARSD 67:46:05:06; ARSD 67:46:05:09. Although an applicant is ineligible for long-term care benefits during the penalty period, the applicant may be eligible for medical-only benefits during that time. ARSD 67:46:05:09.03.

[¶35.] Certain Medicaid eligibility rules apply to trusts. *See* 42 U.S.C. § 1396p(d). Three types of trusts are generally exempt from these Medicaid trust rules — special needs trusts, Medicaid income trusts, and pooled trusts. *See* 42 U.S.C. § 1396p(d)(4); ARSD 67:46:05:17. This case involves pooled trusts.

[¶36.] A pooled trust is "[a] trust containing the assets of an individual who is disabled (as defined in [42 U.S.C. § 1382c(a)(3)])[.]" 42 U.S.C. § 1396p(d)(4)(C). A pooled trust must be "established and managed by a nonprofit association." 42 U.S.C. § 1396p(d)(4)(C)(i). In addition, "[a] separate account [must be] maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts." 42 U.S.C. § 1396p(d)(4)(C)(ii). Finally, the "[a]ccounts in the trust [must be] established solely for the benefit of individuals who are disabled[.]" 42 U.S.C. § 1396p(d)(4)(C)(iii). Disabled individuals of any age may establish sub-accounts within pooled trusts. *See* 42 U.S.C. § 1396p(d)(4)(C). *Cf.* 42 U.S.C. § 1396p(d)(4)(A) (providing that only disabled individuals "under age 65" may participate in Medicaid special needs trusts).

[¶37.] When taking into account certain transfers of assets for purposes of Medicaid eligibility and penalty periods, Medicaid provides an exception for certain transfers of assets to trusts. *See* 42 U.S.C. § 1396p(c)(2)(B)(iv). Under this exception, "[a]n individual shall not be ineligible for medical assistance [for disposing of assets for less than fair market value on or after the look-back date] to the extent that . . . the assets were transferred to a trust (including a trust described in [42 U.S.C. § 1396p(d)(4)]) established solely for the benefit of an individual *under 65 years of age* who is disabled[.]" 42 U.S.C. § 1396p(c)(2)(B)(iv) (emphasis added). Therefore, under Medicaid, pooled trusts are exempt from the general trust rules outlined in 42 U.S.C. § 1396p(d) and transfers of assets into pooled trusts by those under 65 years of age are exempt from the transfer penalty

period rules outlined in 42 U.S.C. § 1396p(c)(1).  42 U.S.C. §§ 1396p(d)(4)(C) and 1396p(c)(2)(B)(iv).

[¶38.]        Here, the parties do not dispute that PATI and the pooled trust satisfy Medicaid's requirements for a pooled trust under 42 U.S.C. § 1396p(d)(4)(C).  The parties also do not dispute that individuals over the age of 65, like Fred and Gladys, may participate in and establish sub-accounts with a Medicaid pooled trust.  What the parties do dispute, however, is whether a penalty period applies for Medicaid eligibility purposes when beneficiaries over age 65 transfer assets into the pooled trust.  We conclude that under the unambiguous statutory language, transfers of assets for less than fair market value into pooled trusts by beneficiaries age 65 or older will be subject to a transfer penalty period for Medicaid eligibility purposes.

[¶39.]        PATI repeatedly asserts that an age limitation cannot be "read into" 42 U.S.C. § 1396p(d)(4)(C), the statute that provides the requirements for a Medicaid pooled trust.  PATI notes that unlike the statute regarding Medicaid special needs trusts, the pooled trust statute does not contain an "under age 65" limitation.  This is accurate — as far as it goes.  Under 42 U.S.C. § 1396p(d)(4)(C), a disabled individual 65 or older may participate in a pooled trust and establish a sub-account in that trust.  But PATI must differentiate between participation in a pooled trust and subsequent penalty periods and delays in eligibility for transfers to the trust. While an individual age 65 or older may participate in a Medicaid pooled trust, he or she will be subject to a penalty period and a delay in Medicaid eligibility for certain benefits if he or she transfers assets to the trust for less than fair market value.  42 U.S.C. §§ 1396p(d)(4)(C) and 1396p(c)(2)(B)(iv).

[¶40.]     PATI also argues that funds in a pooled trust are not available to an applicant for Medicaid eligibility purposes. PATI cites *Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328 (8th Cir. 1998) to support this argument. In that case, the Eighth Circuit Court of Appeals found that under 42 U.S.C. § 1396p(d)(4), funds in a Medicaid special needs trust "are not deemed to be available to [a Medicaid] application or recipient for the purpose of determining [Medicaid] eligibility or the amount of benefits." *Id.* at 332. We agree that 42 U.S.C. § 1396p(d)(4) exempts special needs trusts, pooled trusts, and Medicaid income trusts from the general trust rules found in 42 U.S.C. § 1396p(d). Yet the Eighth Circuit did not hold that these three types of trusts are wholly exempt from the transfer penalty rules found in 42 U.S.C. § 1396p(c). And while 42 U.S.C. § 1396p(c)(2)(B)(iv) creates an exception for trust transfers from the transfer penalty rules, the statute limits the exception to trusts established for an individual under age 65. Therefore, we find PATI's argument and reliance on the Eighth Circuit case unpersuasive.

[¶41.]     PATI further contends that penalizing beneficiaries age 65 or older who transfer assets to a Medicaid pooled trust makes their participation in a pooled trust a nullity, rendering the pooled trust exception meaningless. Essentially, PATI asks "Why would Congress allow individuals 65 or older to participate in pooled trusts if they will nevertheless be subject to a transfer penalty under another statute?" PATI argues that these beneficiaries should not be denied benefits and often cannot wait out the penalty period. First, we must differentiate between being *denied* Medicaid long-term care assistance and being subject to a *delay in eligibility* for Medicaid long-term care assistance via a penalty period. DSS's policy

does not deny a pooled trust beneficiary Medicaid assistance. The policy merely imposes a mandatory penalty period during which time the applicant is not eligible for long-term care assistance. The applicant may nevertheless qualify for medical-only coverage during the penalty period (as Gladys did), and after the penalty period expires, the applicant may thereafter be eligible for long-term care assistance. Moreover, even if PATI were correct in claiming that our interpretation of the statutory language leads to a problematic result, we must confine our decision to the plain language of the statutes. *See People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722. For whatever reason, the penalty period exception for trust transfers is limited to transfers made to trusts established for individuals under age 65, and we confine our decision to this language.

[¶42.] In addition, we cannot accept PATI's claim that "subjecting [the pooled trust statute] to divestment penalties under [the penalty period statute] would read an age limit into [the pooled trust statute], nullifying it for people with disabilities who have passed age 64 because they typically cannot afford to wait out the five-year 'look-back' period." *"The Medicaid program is not to be used as an estate planning tool." Striegel v. S.D. Dep't of Soc. Servs.*, 515 N.W.2d 245, 247 (S.D. 1994)(emphasis in original). Medicaid provisions are "designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." *Id.* Therefore, while we acknowledge the impact of a five-year delay in long-term care

assistance, this provision was designed to preserve Medicaid benefits for those who truly lack the assets or resources to financially secure long-term care.

### 4. Agency Interpretation

[¶43.] "Congress conferred on the Secretary [of Health and Human Services] exceptionally broad authority to prescribe standards for applying certain sections of the [Medicaid] Act." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S. Ct. 2633, 2640, 69 L. Ed. 2d 460 (1981). CMS, a branch of the Department of Health and Human Services, focuses on Medicare and Medicaid services. "As the [United States] Supreme Court recently noted, even relatively informal HCFA (now CMS) interpretations, such as letters from regional administrators, 'warrant[] respectful consideration' due to the complexity of the [Medicaid] statute and the considerable expertise of the administering agency." *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) (quoting *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 497, 122 S. Ct. 962, 151 L. Ed. 2d 935 (2002)).[7] The South Dakota Medicaid Program and administrative rules must comply with federal Medicaid law and any CMS regulations. *See Mulder*, 2004 S.D. 10, ¶ 7, 675 N.W.2d at 215.

[¶44.] In a CMS memorandum from Gale P. Arden, Director of Disabled and Elderly Health Programs Group at the Center for Medicaid and State Operations in

---

7. Even more recently, the Supreme Court wrote: "The Medicaid Act commits to the federal agency the power to administer a federal program. And here the agency has acted under this grant of authority. That decision carries weight. After all, the agency is comparatively expert in the statute's subject matter. And the language of the particular provision at issue here is broad and general, suggesting that the agency's expertise is relevant in determining its application." *Douglas v. Indep. Living Ctr. of S. Cal., Inc., et al.*, ___ U.S. ___, ___, 132 S. Ct. 1204, 1210, ___ L. Ed. ___ (2012).

Baltimore, the transfer penalty and pooled trust statutes at issue in this case were clarified. *See* Memorandum from Gale P. Arden to Jay Gavens, Acting Assoc. Regional Adm'r, Div. of Medicaid and Children's Health (Apr. 14, 2008). In part, the memorandum stated:

> Although a pooled trust may be established for beneficiaries of any age, funds placed in a pooled trust established for an individual age 65 or older may be subject to penalty as a transfer of assets for less than fair market value. When a person places funds in a trust, the person gives up ownership of the funds. Since the individual generally does not receive anything of comparable value in return, placing funds in a trust is usually a transfer for less than fair market value. The statute does provide an exception to imposing a transfer penalty for funds that are placed in a trust established for a disabled individual. *However, only trusts established for a disabled individual 64 or younger are exempt from application of the transfer of assets penalty provisions . . . .*

*Id.* (emphasis added). CMS issued this memorandum because "it was brought to [its] attention that in many States . . . individuals age 65 or older are establishing pooled trusts, but the States may not be applying the transfer of assets penalty provisions as required by statute." *Id.* The memorandum explained that "[i]f States are allowing individuals age 65 or older to establish pooled trusts without applying the transfer of assets provisions, they are not in compliance with the statute. [F]ederal statute requires the application of the transfer rules in this situation; it [is] not a decision for each State to make."[8] *Id.* One month later, the Boston Regional Office of CMS issued a memorandum to all state Medicaid agencies in its

---

8. In 2010, DSS amended its administrative rules to directly reflect CMS's interpretation of the transfer penalty statutes. *See* ARSD 67:46:05:32.03(3)(e). The amendment became effective July 1, 2010.

region, reciting identical language and asking all states to review their pooled trust provisions and ensure that the state provisions comply with federal standards.[9] *See* Memorandum from Richard R. McGreal, Assoc. Regional Adm'r, Ctrs. for Medicare and Medicaid Servs., to All Medicaid State Agencies (May 12, 2008).

[¶45.] CMS also discussed pooled trusts and transfer penalties in its State Medicaid Manual (SMM).[10] The SMM provides information regarding policies and procedures to state Medicaid agencies. *SMM*, Foreword § A. The contents of the SMM are binding on state Medicaid agencies. *SMM*, Foreword § B. In the eligibility requirements section, CMS notes under the pooled trusts sub-section that:

> Establishing an account in [a pooled trust] may or may not constitute a transfer of assets for less than fair market value. For example, the transfer provisions exempt from a penalty trusts established solely for disabled individuals who are under age 65 or for an individual's disabled child. *As a result, a special needs trust established for a disabled individual who is age 66 could be subject to a transfer penalty.*[11]

---

9. At oral argument, PATI's counsel said that South Dakota was in the Denver CMS region, and thus the CMS memo from the Boston region was not binding on DSS in South Dakota. Nevertheless, the memo from Gale P. Arden at CMS headquarters in Baltimore specifically stated that the memo would be provided to all the other CMS Regional Offices to refresh the understanding of their staffs.

10. Centers for Medicare & Medicaid Services, *The State Medicaid Manual*, http://www.cms.gov/Manuals/PBM/itemdetail.asp?filterType=none&filterByD ID=99&sortByDID=1&sortOrder=ascending&itemID=CMS021927&intNumP erPage=10 (last modified Sept. 8, 2005). For simplicity purposes, citations will be to the sections of the manual only without full URL citations.

11. Some authorities often use the term "special needs trusts" to generally describe the three types of trusts created for the benefit of disabled individuals under 42 U.S.C. § 1396p(d)(4)(A) through (C). However, as both the statutes and the SMM indicate, a special needs trust (42 U.S.C. § 1396p(d)(4)(A)) is different from a pooled trust (42 U.S.C. § 1396p(d)(4)(C)).

(continued . . .)

*SMM*, Chapter 3: General and Categorical Eligibility Requirements, § 3259.7(B) (emphasis added).

[¶46.] In addition, the Social Security Administration reached the same conclusion in its Program Operations Manual System (POMS), "the publicly available operating instructions for processing Social Security claims[.]" *Wash. State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1025, 154 L. Ed. 2d 972 (2003). "While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect[.]" *Id.* Under a section reviewing the requirements for pooled trusts, POMS states that "[t]here is no age restriction under this exception. However, a transfer of resources to a trust for an individual age 65 or over may result in a transfer penalty."[12]

[¶47.] We find these agency interpretations of the relevant Medicaid statutes to be reasonable, and thus, we give them credence. These interpretations of the pooled trust and penalty period statutes bolster our reading of the unambiguous

_____

(. . . continued)
In this note, CMS is likely using the term "special needs trust" generally to describe a pooled trust because this note follows the pooled trust section and a similar note follows the preceding special needs trust section.

12. *Program Operations Manual System*, § SI 01120.203, https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120203 (last updated Oct. 27, 2011).

statutory language requiring penalty periods for transfers of assets for less than fair market value into pooled trusts by beneficiaries age 65 or older.[13]

### 5. Legislative History

[¶48.] PATI argues that the legislative history demonstrates that pooled trusts are not only exempt as a resource for Medicaid eligibility purposes but the trusts are also exempt from transfer penalty periods. "This Court does not, however, review legislative history when the language of the statute is clear." *Bertelsen v. Allstate Ins. Co.*, 2009 S.D. 21, ¶ 15, 764 N.W.2d 495, 500. Because we conclude that the statutory language is unambiguous and the agency interpretations of the statutes are reasonable, we do not explore this argument.

### Decision on Administrative Appeal

[¶49.] In the administrative appeal, Fred and Gladys challenge the circuit court's affirmance of the ALJ's ruling on DSS's imposition of a Medicaid transfer penalty period. We review an administrative appeal in accord with SDCL 1-26-37. "A review of an administrative agency's decision requires this Court to give great weight to the findings made and inferences drawn by an agency on questions of fact." *Snelling v. S.D. Dep't of Soc. Servs.*, 2010 S.D. 24, ¶ 13, 780 N.W.2d 472, 477. We will reverse an agency's decision only if it is "clearly erroneous in light of the entire evidence in the record." *Id.* However, statutory interpretation and other questions of law within an administrative appeal are reviewed under the de novo

---

13. At least one court agrees with our holding. *See Ctr. for Special Needs Trust Admin., Inc. v. Olson*, No. 1:09-cv-072, 2011 WL 1562516, at *8 (D.N.D. Apr. 25, 2011).

standard of review. *Id.* Therefore, in light of the foregoing authority and because the parties do not dispute the facts in these cases, we apply the de novo standard of review to this administrative appeal.

[¶50.]     Fred and Gladys argue that the circuit court erred in affirming the ALJ's decision. Given our holding that penalty periods can be applied to transfers of assets for less than fair market value into pooled trusts by beneficiaries age 65 or older, the only relevant issue remaining is whether Fred's and Gladys's transfers to the trust were transfers for "less than fair market value." Fred and Gladys contend that a transfer of assets by one individual to a pooled trust established for another person age 65 or older, or a third-party trust transfer, is a divestment. But they contend that a transfer made by a pooled trust beneficiary for the sole benefit of the beneficiary is not a divestment under Medicaid. Fred and Gladys believe that an individual who transfers assets to a pooled trust receives value in return because he or she retains equitable ownership of the trust funds. They claim that in transferring their assets to the pooled trust, they "merely exchanged legal ownership for equitable ownership" and that the value they received for their transfers was the benefit of the goods and services purchased by the trust.

[¶51.]     We disagree that only third-party transfers to pooled trusts constitute divestments under Medicaid or that the transfer penalties only apply when a third party transfers assets to a pooled trust for the benefit of a pooled trust beneficiary. Under 42 U.S.C. § 1396p(d)(4)(C), a pooled trust is "[a] trust *containing the assets of an individual who is disabled . . . .*" (Emphasis added.) While parents, grandparents, legal guardians, or courts may *establish* a pooled trust for a disabled

beneficiary, these third parties may not *fund* the pooled trust with third-party assets. *See* 42 U.S.C. § 1396p(d)(4)(C)(iii). Thus, when a third party places his or her own assets into a pooled trust for the benefit of a pooled trust beneficiary, the trust would not qualify as an Medicaid pooled trust in the first place.

[¶52.]     We also disagree with Fred and Gladys that their transfers to the pooled trust were transfers for fair market value. While the SMM states that pooled trust account transfers "may or may not constitute a transfer of assets for less than fair market value[,]" the Arden CMS memorandum states that a pooled trust transfer is usually a transfer for less than fair market value because the beneficiary typically does not receive anything in return. In addition, contrary to Fred's and Gladys's assertion, a pooled trust transfer that is for the sole benefit of a beneficiary is not necessarily a transfer for fair market value. The SMM defines "fair market value" as "an estimate of the value of an asset, if sold at the prevailing price at the time it was actually transferred." *SMM,* Chapter 3: General and Categorical Eligibility Requirements, § 3258.1(A)(1). Following this definition, the SMM notes that "[f]or an asset to be considered transferred for fair market value or to be considered to be transferred for valuable consideration, *the compensation received for the asset must be in a tangible form with intrinsic value.*" *Id.* (emphasis added).

[¶53.]     Fred and Gladys claim that the value they received for their transfers was the benefit of the goods and services purchased by the trust. They note the following language from the SMM:

> Resources placed in [a pooled trust] for a disabled individual are subject to the imposition of a penalty under the transfer of assets provisions unless the transfer is specifically exempt from penalty as explained in §3258.10 *or unless the resources placed in the trust are used to benefit the individual, and the trust purchases items and services for the individual at fair market value.*

*SMM*, Chapter 3: General and Categorical Eligibility Requirements, § 3259.7(B)(2) (emphasis added). Yet Fred and Gladys identify no items or services purchased for them by the trust, nor do they establish that these purchases were for fair market value. Furthermore, under the trust document, the decision to distribute funds to a beneficiary lies solely within the trustee's discretion. That is, there is nothing guaranteeing that a beneficiary's transfer will be used to benefit that beneficiary. Therefore, we conclude that Fred's and Gladys's transfers were transfers for less than fair market value.

### Conclusion

[¶54.] The "law of the case" doctrine does not apply in this case because the narrow age limitation issue was not previously litigated and because application of the doctrine would not support the doctrine's policy considerations and would perpetuate an erroneous ruling. Considering the unambiguous language of the statutes, coupled with the reasonable agency interpretations, we conclude that transfers of assets into pooled trusts by beneficiaries age 65 or older may be subject to a transfer penalty period for Medicaid eligibility purposes.

[¶55.] We affirm the administrative appeal (#25902) and reverse the declaratory judgment (#25536).

[¶56.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and BARNETT, Circuit Court Judge, concur.

[¶57.]     BARNETT, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.