# United States Court of Appeals

## For the First Circuit

No. 02-2071

MUNICIPALITY OF SAN JUAN,

Plaintiff, Appellant,

v.

JOHNNY RULLAN, SECRETARY OF HEALTH OF THE
COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lipez, Circuit Judges.

Juan B. Soto-Balbas, with whom Ana L. Velilla-Arce and Mercado
& Soto, P.S.C. were on brief, for appellant.
     Camelia Fernández Romeu, Assistant Solicitor General, with
whom Roberto J. Sánchez Ramos, Solicitor General, and Vanessa Lugo
Flores, Deputy Solicitor General, were on brief, for appellees.

January 24, 2003

**SELYA**, <u>Circuit Judge</u>. This case involves the power of a district court, after a settled case has been voluntarily dismissed under Fed. R. Civ. P. 41(a)(1)(ii), to police the settlement through summary enforcement proceedings. We hold that a district court does not retain supplemental enforcement jurisdiction over a settlement after granting a Rule 41(a)(1)(ii) motion unless the parties either have agreed to incorporate the terms of the settlement into the dismissal order or have executed a stipulation authorizing the court to retain jurisdiction over the implementation of the settlement. Because the record reflects no such agreement here, we affirm the order denying a writ of execution designed to enforce summarily a settlement reached many years ago by and between the parties.

The origins of this dispute go back more than three and one-half decades. On August 25, 1966, the Municipality of San Juan (the Municipality) and the Department of Health of the Commonwealth of Puerto Rico (the Department) entered into a contract relative to the allocation of federal Medicaid dollars.[1] As Medicaid funding increased, the parties periodically redefined the terms of their relationship. Over time, the payments to the Municipality rose dramatically.

---

[1] Medicaid payments are made to the several states, and to the Commonwealth of Puerto Rico, under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v.

In or around 1986, the parties reached an impasse over how to allocate federal Medicaid funds. On May 13, 1987, the Municipality initiated an action against the Department in the United States District Court for the District of Puerto Rico, claiming that the Department was in violation of the Medicaid Act and in breach of contract. The case was assigned to Judge Fusté.

In short order, the parties reached an accord. The settlement agreement provided the Municipality with certain Medicaid funds for the fiscal years 1986-1987 and 1987-1988. It also established a formula by which the parties could adjust the 1987-1988 payments if Congress increased Puerto Rico's Medicaid allotment for that fiscal year.

On August 17, 1987, the parties informed Judge Fusté of the settlement. At a chambers conference, the parties and the court discussed how the pending action would be terminated. The Municipality told Judge Fusté that it was contemplating a motion for voluntary dismissal. The judge voiced no disapproval but suggested that the parties proffer a copy of the settlement agreement under seal and stipulate to the entry of judgment. Although the Municipality embraced this suggestion, the Department balked. At that point, Judge Fusté washed his hands of the matter; he stated that how to terminate the case was up to the parties, and the conference ended on that note.

Later that day, the parties submitted two documents to the district court. The first — to be placed under seal — limned the terms of the settlement. The second was a motion for voluntary dismissal. The judge, on his own initiative, entered an order memorializing the basis for the court's jurisdiction over the dispute, the fact of the settlement, and the court's intention to enter judgment in favor of the Municipality. In that order, the court expressed its opinion that "both [parties] need the protection of a judgment on a matter of public interest and concern." The court then proceeded to enter a judgment for the Municipality against the Department, incorporating in the judgment the terms of the settlement agreement. Both the order and the judgment were promulgated on August 17, 1987.

The Department promptly moved to vacate these filings, arguing that it had never agreed to the entry of an adverse judgment. On November 2, 1987, the district court vacated both the order and the judgment, entering in lieu thereof an amended order and judgment. The amended order recited that the case had been settled, approved the settlement (without elaborating upon its terms), and granted the motion for voluntary dismissal pursuant to Rule 41(a)(1). The text went on to remind the parties that the district court had "inherent power to enforce settlement agreements" and expressed the view that, notwithstanding the voluntary dismissal, the district court retained jurisdiction over

-4-

the case.[2]  The amended judgment dismissed the action without prejudice pursuant to Rule 41(a)(1).  Although it incorporated by reference the terms of the amended order, it made no direct reference to the settlement agreement.

Despite these revisions, the Department feared that the district court's editorial comments about the retention of jurisdiction exposed it to summary enforcement proceedings should the Municipality claim, in the future, that the Department had not lived up to the terms of the settlement.  To set this poltergeist to rest, the Department appealed.  We clarified, and then affirmed, the amended order and judgment in an unpublished opinion.  Municipality of San Juan v. Izquierdo Mora, No. 88-1047, slip op. (1st Cir. May 16, 1988) (per curiam).  We characterized the amended judgment as "a straightforward dismissal pursuant to Rule 41(a)(1)(ii)" and held that it did "not operate to incorporate by reference the settlement agreement."  Id. at 6.  In the same vein, we treated the district court's references to its inherent enforcement powers as mere dicta and ruled that, since the action

---

[2]The relevant language, shorn of citations, reads:

We remind both sides of this court's inherent power to enforce settlement agreements in cases pending before it.  If asked, we shall not hesitate to take appropriate action protecting this agreement, either summarily or, if necessary, following an evidentiary hearing.  Both parties moved from irreconcilable positions to the point of settlement and, therefore, the settlement agreement must be protected as a matter of public interest and concern against further litigation on the same subject.

had been dismissed, "there [was] no warrant to review the dicta."[3] Id. To cinch matters, we emphasized that any suggestion that the dicta "could be enforced via the [district] court's contempt power [was] farfetched and without basis." Id.

For nearly fourteen years, the dismissed action remained dormant. But this proved to be the calm before the storm. On March 26, 2002, the Municipality, alleging that the 1987 settlement agreement had served as the foundation for the allocation of Medicaid disbursements during the intervening years and that the Department had unilaterally cut off the flow of funds (with the result that the Department owed it some $40,000,000), filed a motion asking the district court to enforce the 1987 settlement agreement.[4] The district court initially granted this motion and issued an ex parte order of execution. The Department quickly obtained a stay. After considerable skirmishing — the details of which are unimportant for present purposes — Judge Fusté reversed direction, vacated the order of execution, referred to our earlier

_____

[3]Dicta comprises observations in a judicial opinion or order that are "not essential" to the determination of the legal questions then before the court. Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992). Dicta — as opposed to a court's holdings — have no binding effect in subsequent proceedings in the same (or any other) case.

[4]This motion named, as a respondent, Johnny Rullan, in his official capacity as Puerto Rico's Secretary of Health. The original action named Dr. Luis A. Izquierdo Mora, who at the time occupied that position. By operation of law, Rullan is now the proper party. See Fed. R. Civ. P. 25(d)(1).

-6-

unpublished opinion, and denied the Municipality's motion for summary enforcement.  He subsequently rejected the Municipality's request for reconsideration.

Displeased by this turn of events, the Municipality sought a writ of mandamus directing the district court to reinstate its original ex parte order.  We treated that petition as a notice of appeal.  Following full briefing, we heard oral argument on January 6, 2003.

The Municipality's appeal rests on two pillars.  First, the Municipality contends that the 1987 settlement agreement applies beyond the 1987-1988 fiscal year (up to the present time). Second, it posits that the district court retained jurisdiction over that agreement, thus making summary enforcement proceedings appropriate.  But stating the arguments in this order puts the cart before the horse:  the district court's jurisdiction to conduct a summary enforcement proceeding must be examined before we can undertake an inquiry into the merits of the case.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (collecting cases); Berner v. Delahanty, 129 F.3d 20, 23 (1st Cir. 1997).  We turn, therefore, to the jurisdictional issue.

We begin our analysis by rehearsing the familiar "law of the case" doctrine.  That doctrine has two components:

> One branch involves the so-called mandate rule
> (which, with only a few exceptions, forbids,
> among other things, a lower court from
> relitigating issues that were decided by a

> higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case). The other branch . . . provides that unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.

Ellis v. United States, ___ F.3d ___, ___ (1st Cir. 2002) [No. 01-2055, slip op. at 20] (citations and internal quotation marks omitted). Here, the first branch — the mandate rule — obliged the district court to follow our disposition of issues actually decided in our earlier opinion.

In that opinion, we ruled unequivocally that the district court's amended order and judgment constituted a straightforward dismissal pursuant to Rule 41(a)(1)(ii).[5] See Izquierdo Mora, slip op. at 6. While there are exceptions to the mandate rule, none applies here, and so that determination was binding on the district court. United States v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir. 1991). Viewed in this light, the question as to whether the district court had jurisdiction over the Municipality's motion for

---

[5]The rule reads in pertinent part:

> [A]n action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice . . . .

Fed. R. Civ. P. 41(a)(1)(ii).

-8-

summary enforcement of the 1987 judgment hinges on the consequences that attach to a Rule 41(a)(1)(ii) dismissal.

The Supreme Court spoke directly to that issue in Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994). There, as here, the parties reached a settlement, and the district court dismissed the case pursuant to Rule 41(a)(1)(ii). Id. at 376-77. A problem subsequently arose, and a disappointed party moved for summary enforcement of the settlement agreement. The district court exercised jurisdiction over the motion and granted relief. Id. at 377. The court of appeals affirmed the exercise of supplemental enforcement jurisdiction in an unpublished rescript, and the Supreme Court granted certiorari to consider the jurisdictional question. Kokkonen v. Guardian Life Ins. Co., 510 U.S. 930 (1993).

In its ensuing opinion, the Court pointed out that enforcing a settlement agreement "requires its own basis for jurisdiction." Kokkonen, 511 U.S. at 378. It debunked the notion that a district court always enjoys inherent power to enforce settlement agreements. Id. at 377-78. Moreover, it found that "[n]either [Rule 41(a)(1)] nor any provision of law provides for jurisdiction of the [rendering] court over disputes arising out of an agreement that produces [a Rule 41(a)(1) dismissal]." Id. at 378. The Court went on to explain that, if a voluntary dismissal is contemplated, the parties may arrange for the rendering court to

retain supplemental enforcement jurisdiction over a related settlement by having the court either (1) incorporate in the dismissal order the terms of the settlement agreement, or (2) enter a separate stipulation (signed by all the parties) that authorizes the retention of jurisdiction. Id. at 381. Should neither of these routes be traveled, a party claiming a breach of a settlement agreement must pursue a separate action to seek enforcement of the agreed terms. Id. at 382.

Kokkonen is controlling here. The original action ended in what we termed a straightforward dismissal under Rule 41(a)(1)(ii). Izquierdo Mora, slip op. at 6. We ruled that the settlement agreement was not incorporated into the dismissal order, and we classified the district court's comments anent its inherent power as mere dicta. Id. These are now established facts under the mandate rule. Together with the absence of any stipulation memorializing the parties' mutual assent to the retention of supplemental enforcement jurisdiction, they bring this case squarely within Kokkonen's precedential orbit.

In an effort to obscure the clarity of this reasoning, the Municipality asseverates that the district court in fact retained jurisdiction in a manner consistent with Kokkonen. Its asseveration relies primarily on the district court's promise to protect the settlement and its pledge to take whatever action might

prove necessary to do so. See supra note 2 (quoting the district court's language).

This is a cut-and-paste argument, which erroneously presupposes that our earlier opinion excised only the first sentence of the paragraph purporting to retain jurisdiction while leaving intact the remainder of that paragraph. We reject that attempt to balkanize our previous ruling. Our core holding in Izquierdo Mora was stated unambiguously: the amended order and judgment operated as a Rule 41(a)(1)(ii) dismissal — with no strings attached. See Izquierdo Mora, slip op. at 6 (explaining that the district court's amended order and judgment "do[] no more than accept[] the settlement and voluntarily dismiss[] the case as the parties had requested"). Since the course of action that the Municipality sought to pursue below is based upon the very argument that we previously dismissed as "farfetched and without basis," id., the mandate rule obliged the lower court to reject it.

This result is perfectly consistent with Kokkonen. Although the Kokkonen Court spelled out certain ways in which a district court could retain enforcement jurisdiction over a settlement coincident with a Rule 41(a)(1) dismissal, it conditioned that outcome on the mutual consent of the parties. See Kokkonen, 511 U.S. at 381 ("If the parties wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so.") (emphasis in original); id. at 381-82

-11-

("[W]e think the court is authorized to embody the settlement contract in its dismissal (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree."). There is no such mutuality here. The record shows beyond hope of contradiction that the Department never agreed to imbue the district court with summary enforcement authority over the settlement agreement (indeed, the Department's insistence that the district court <u>not</u> be so endowed was the raison d'être for the earlier appeal). <u>See</u> <u>Izquierdo Mora</u>, slip op. at 2, 5. Nor did the Municipality, at the relevant time, "clearly dispute [the Department's] assertion that [it] had never agreed to anything other than a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)." <u>Id.</u> at 4-5. Given the absence of mutual consent, the district court did not have the authority, under <u>Kokkonen</u>, to retain supplemental enforcement jurisdiction.

We need go no further. The law of the case required the lower court to adhere to our earlier opinion interpreting the amended order and judgment as a routine application of Rule 41(a)(1)(ii). Characterizing the order and judgment in that fashion, the district court correctly concluded that it lacked jurisdiction to entertain the Municipality's attempted summary enforcement proceeding. In short, the Municipality has identified no legally sufficient basis for the district court's retention of jurisdiction over the 1987 settlement.

These determinations do not leave the Municipality remediless. If it believes that the Department is in breach of a preexisting contractual obligation, it may seek to vindicate its rights in a separate action. See Kokkonen, 511 U.S. at 381-82; Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999). That action may be prosecuted in any court of competent jurisdiction. We express no opinion, however, as to whether any such action would (or would not) fall within the jurisdiction of the federal courts. By the same token, we do not reach (and take no view of) any interpretive comments that the district court may have made anent the reach of the 1987 settlement agreement.

**We affirm the order of the district court denying the plaintiff's motion for summary enforcement of the 1987 judgment**. **Costs are to be taxed in favor of the defendants**.