# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No.  57628-7-II |
| Respondent, | |
| v. | |
| Kitsap Rifle and Revolver Club, a not-for-profit corporation registered in the State of Washington, and JOHN DOES and JANE DOES I-XX, inclusive, | UNPUBLISHED OPINION |
| Appellant, | |
| and | |
| IN THE MATTER OF NUISANCE AND UNPERMITTED CONDITIONS LOCATED at One 72-acre parcel identified by Kitsap County Tax Parcel ID No. 362501-4-002-1006 with street address 4900 Seabeck Highway NW, Bremerton, Washington. | |

LEE, J. — Following several previous appeals and remands regarding an injunction against its use of cannons, the Kitsap Rifle and Revolver Club (Club) appeals the trial court's "Second Order Amending February 5, 2016 Order Supplementing Judgment on Remand" (Second Order).[1] The Club argues that the trial court erred on remand by (1) declining to reopen the record and allow supplemental evidence, (2) adopting a definition of "cannon" that is overbroad and not tailored to the specific types of cannons that caused a sound expansion, and (3) adopting a

---

[1]  Clerk's Papers (CP) at 947.

definition of "cannon" that is vague or ambiguous in violation of CR 65(d). Kitsap County seeks RAP 18.9(a) sanctions against the Club, arguing that the appeal is frivolous.

We hold that (1) the trial court did not err on remand by declining to reopen the record to allow supplemental evidence, (2) the Club has waived any argument that the definition of "cannon" is overbroad and not properly tailored to the specific types of cannons that caused a sound expansion, (3) the trial court's definition of "cannon" does not violate CR 65(d) because the definition is not vague or ambiguous, and (4) this appeal is not wholly frivolous. Accordingly, we affirm the trial court's Second Order but deny the County's request for RAP 18.9(a) sanctions.

FACTS

A.     BACKGROUND AND BENCH TRIAL

The Club is a nonprofit corporation that has operated a shooting range in Bremerton since 1926. *Kitsap County v. Kitsap Rifle & Revolver Club* (*Kitsap Rifle* III), No. 53898-9-II, slip op. at 5 (Wash. Ct. App. Dec. 1, 2020) (unpublished), *amended* (Wash. Ct. App. Feb. 2, 2021).[2] In 1993, the Kitsap County Board of Commissioners notified the Club that it considered the use of the shooting range to be a lawfully established nonconforming use. *Id.*

In 2005 or 2006, the Club's shooting range grew noisier due to frequent practical shooting practices and competitions and the use of explosive devices and higher caliber weaponry. *Id.* The loud, disruptive, and lengthy sounds of shooting became clearly audible in nearby neighborhoods. *Id.*

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2053898-9-II%20Unpublished%20Opinion.pdf.

No. 57628-7-II

In 2011, Kitsap County filed a complaint seeking an injunction, declaratory judgment, and nuisance abatement. *Id.* at 6. The complaint alleged that the Club's changes in the use of the shooting range were unlawful expansions of the Club's nonconforming use. *Id.*

The case proceeded to a bench trial. *Id.* At trial, a representative of the Club testified that the Club used cannons before receiving the 1993 letter from the Kitsap County Board of Commissioners. The representative testified that, in 1993, cannons were used once or twice per month during the competitive season, and the larger cannons were used for reenactments one or twice per year.

The trial court also considered exhibits 113 and 131, which were photos of cannons posted online by the Club in a web photo album entitled "'2009 Independence Day.'" CP at 978.

3



Ex. 113.[3]

---

[3] [http://perma.cc/LW7E-VMDA].



Ex. 131.[4]

In 2012, following a bench trial, the trial court made detailed written findings of fact, conclusions of law, and orders. *Kitsap Rifle* III, slip op. at 6. The trial court found in relevant part that:

> 86. The Club allows use of exploding targets, including Tannerite targets, as well as cannons, which cause loud "booming" sounds in residential neighborhoods within two miles of the Property, and cause houses to shake.

---

[4] [https://perma.cc/AZV8-MTS2].

> 87. Use of cannons or explosives was not common at the Club in approximately 1993.

CP at 103.

The trial court ruled that the Club had significantly changed and enlarged its existing use by "increasing the noise levels by allowing explosive devises, higher caliber weaponry greater than 30 caliber and practical shooting," among other activities. CP at 105. The trial court concluded that this change was an expansion, not merely an intensification, of the Club's nonconforming use. *Kitsap Rifle* III, slip op. at 6. The trial court entered a declaratory judgment that this expansion terminated the nonconforming use status of the Club's property. [5] *Id.* The trial court issued a permanent land use injunction prohibiting the Club from operating as a shooting range unless it received a conditional use permit. *Id.*

B.    *KITSAP RIFLE* I

The Club appealed the trial court's declaratory judgment and permanent injunction. *Kitsap County v. Kitsap Rifle & Revolver Club* (*Kitsap Rifle* I), 184 Wn. App. 252, 261, 337 P.3d 328 (2014), *review denied*, 183 Wn.2d 1008 (2015). The Club did not assign error to any of the trial court's findings of fact regarding the Club's expansions of its nonconforming use. *Id.* at 267. These unchallenged findings became verities on appeal. *Id.*

We held that the termination of the nonconforming use was an improper remedy and vacated the trial court's injunction prohibiting the Club from operating as a shooting range. *Id.* at

---

[5] The trial court also concluded that the Club's failure to place reasonable restrictions on the use of cannons was an unlawful and abatable common law nuisance and issued a permanent nuisance injunction which, in relevant part, prohibited the use of "exploding targets and cannons." CP at 114.

297, 301. We stated that the appropriate remedy "must reflect the fact that some change in use—'intensification'—is allowed and only 'expansion' is unlawful." *Id.* at 301. We remanded for the trial court to determine an appropriate remedy. *Id.*

C.    REMAND FROM *KITSAP RIFLE* I

On remand, the Club filed a motion to reopen the record, arguing that reopening the record was necessary for fashioning an appropriate remedy. *Kitsap Rifle* III, slip op. at 7. The trial court denied the motion. *Id.* The trial court reasoned that *Kitsap Rifle* I did not anticipate reopening the record and additional evidence was not necessary for determining a proper remedy. *Id.*

On February 5, 2016, the trial court issued an order supplementing judgment on remand. *Id.* at 8. The order replaced only the declaratory judgment provision and land use injunction from the 2012 judgment. *Id.* The order granted declaratory judgment and ruled that several specific uses of the property constituted unlawful expansions, including "uses increasing noise levels by allowing explosive devices." CP at 341. The order included a land use injunction prohibiting the unlawful expansions listed in the declaratory judgment, including "[u]se of explosive devices including exploding targets." CP at 341.

D.    *KITSAP RIFLE* II

The Club appealed the trial court's ruling denying the motion to reopen the record, along with the trial court's February 2016 order replacing the 2012 declaratory judgment provision and land use injunction. *Kitsap County v. Kitsap Rifle & Revolver Club* (*Kitsap Rifle* II), No. 48781-1-II, slip op. at 1 (Wash. Ct. App. Nov. 21, 2017) (unpublished).[6]

---

[6] https://www.courts.wa.gov/opinions/pdf/D2%2048781-1-II%20Unpublished%20Opinion.pdf.

We affirmed the trial court's denial of the Club's motion to reopen the record because the issue before the trial court on remand involved only the proper remedy for the Club's impermissible expansions of use, and the *Kitsap Rifle* I court did not say factual questions remained or that additional evidence was necessary to fashion a proper remedy. *Id.* at 10-13. However, we vacated the part of the injunction prohibiting the "'use of explosive devices including exploding targets,'" concluding that this part of the injunction was overbroad and vague because it appeared to prohibit all explosive devices. *Id.* at 19-21. We noted that the trial court's original 2012 order concluded that "exploding targets and cannons" constituted an impermissible expansion of use and specifically prohibited the use of "'exploding targets and cannons.'" *Id.* at 20 (quoting CP at 203). We stated that the February 2016 order prohibiting all explosive devices prohibited "more than necessary to remedy the increased noise levels at the shooting range." *Id.* We remanded for the trial court to (1) "clarify which explosive devices were found to create an impermissible expansion of the Club's nonconforming use" and (2) "fashion a remedy that implements its original permanent injunction prohibiting the use of 'exploding targets and cannons.'" *Id.* at 28.

E.      REMAND FROM *KITSAP RIFLE* II

On remand, the County filed a motion to amend the February 2016 order. *Kitsap Rifle* III, slip op. at 10. The Club opposed the County's motion and filed another motion to reopen the record. *Id.* at 10-11. The Club argued that further evidence was necessary for the trial court to resolve factual questions regarding, among other things, the difference in firearms used at the Club before and after 2006. *Id.*

The trial court did not rule on the Club's motion to reopen the record. *Id.* at 11. Instead, the trial court ruled on the County's motion and stated that ruling on the County's motion made the Club's motion moot. *Id.*

In June 2019, the trial court entered an order amending the February 2016 supplemental judgment. *Id.* at 12. The June 2019 order replaced the declaratory judgment and land use injunction provisions of the February 2016 order. *Id.* The new declaratory judgment stated that "discharging cannons or causing exploding targets to explode" was an unlawful expansion of the Club's nonconforming use. CP at 591. The new land use injunction prohibited "discharging cannons or causing exploding targets to explode." CP at 591. The trial court did not define any of the terms in the new land use injunction. *Kitsap Rifle* III, slip op. at 12.

F.    *KITSAP RIFLE* III[7]

The Club appealed the June 2019 order, arguing that the trial court erred by (1) ruling that discharging cannons constituted an unlawful expansion of the Club's nonconforming use and (2) not defining "cannons." *Id.* at 16, 21. We held that the Club had waived any argument regarding whether the discharge of cannons constituted an unlawful expansion of the Club's nonconforming use. *Id.* at 15-16. Specifically, we stated that

> [t]he June 2019 order found that "discharging cannons or causing exploding targets to explode" constituted an unlawful expansion of the Club's nonconforming use. CP at 446. The Club argues that the June 2019 order did not clarify which

---

[7] Around this same time, the Club filed a separate appeal on other issues related to a contempt sanction and the Club's financial ability to apply for a site development activity permit. *Kitsap County v. Kitsap Rifle & Revolver Club*, No. 53878-4-II, slip op. at 1, 5-6, 8 (Wash. Ct. App. Dec. 29, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053878-4-II%20Unpublished%20Opinion.pdf. The issues in that appeal are not directly relevant to this appeal.

explosive devises and what specific use of the cannons and exploding targets created the expansion. We conclude that the Club waived this argument.

> In the trial court, the County's attorney stated that "at least with respect to the order as it pertains to exploding targets. That's a compromised agreement." RP at 25. The Club's attorney replied, "Yeah; and, you know, we don't want to rehash things that are common in the two orders." RP at 25. Later, the County's attorney stated, "1(c) and 6(a)(3), discharge of cannons or causing exploding targets to explode. That right there, that phrase, is agreed upon amongst the parties. Now the definitions, that's different, but that particular clause is agreed upon." RP at 26. The Club's attorney did not object to that statement.
>
> . . . .
>
> The trial court record shows that the Club agreed that the use of cannons and exploding targets constituted an expansion of use. We decline to consider the Club's argument that the trial court erred in ruling that discharging cannons or causing exploding targets to explode constituted an unlawful expansion of the Club's nonconforming use.

*Id.*

However, we held that the trial court erred by not defining "cannons." *Id.* at 21-22. In so holding, we stated that the term "cannons"

> could refer to any number of things; there are many different types of "cannons." It is unclear what type of cannon the trial court was referencing. The County notes only that the trial court found in 2012 that the use of cannons and exploding targets caused "loud 'booming' sounds in residential neighborhoods within two miles of the property, and cause houses to shake." CP at 103.

*Id.* at 22. Because the meaning of "cannons" was unclear, we remanded "for the trial court to define the operative term 'cannons.'" *Id.*

G.      REMAND FROM *KITSAP RIFLE* III

On remand, the Club filed a motion to stay remand proceedings or alternatively reopen the record. The Club argued that reopening the record was necessary because the original trial judgment did "not contain the findings of fact necessary or sufficient to . . . define 'cannons' so as

10

to prohibit only those activities that made loud booming sounds after 2006 that constituted an expansion of sound from the Club." CP at 597.

The trial court denied the Club's motion. The trial court entered an order regarding proceedings on remand with a briefing schedule and instructions for the parties to file and provide the trial record with a statement of their requested relief on remand. The order allowed the parties to request leave to supplement the record with "specific evidence or types of evidence to address any inadequacy or incompleteness in the record." CP at 910.

Both the County and Club filed requests for the trial court to define the term "cannons." The Club specifically asked the trial court to define "cannons" "so as not to prohibit any of the types of cannons used at the Club before 2005 and to prohibit only the cannons that 'cause[d] houses to shake' with 'loud booming sounds' after 2005 or 2006, as found by the trial court in Findings of Fact 85 and 86 in the Original Trial Judgment." CP at 917 (internal quotation marks omitted). The Club argued that this definition could not be fashioned using the existing trial record and requested that the trial court allow the Club to supplement the record with additional evidence regarding the different types of cannons.

In its opening brief on remand, the County asked the trial court to use the following definition for "cannon":

> [a]ny non-handheld device from which a projectile may be fired by an explosive. A non-handheld device is a device that is too large or heavy to be discharged without being mounted on the ground or a carriage, pedestal, tripod, or similar apparatus.

CP at 928. The County specified that the definition should not include mounted pistols or rifles.

11

The Club asked the trial court to reject the County's proposed definition because it was overbroad, vague, and not supported by the record or existing findings of fact. The Club also asked the trial court to reopen the record for the Club to submit supplemental evidence supporting a definition of "cannons" that includes only cannons with bore diameters larger than five inches. Specifically, the Club wanted "to present testimony from one or more witnesses with personal and specialized knowledge about certain types of cannons they observed being used at the Club's property that could not have caused houses to shake or otherwise cause a sound expansion." CP at 943.

On June 22, 2022, the trial court entered a Second Order. The trial court found that this court, in *Kitsap Rifle* III, held that the Club had waived the following arguments: that (1) "the trial court erred in prohibiting cannons at the Club property because the trial court's 2019 order did not clarify which specific use of cannons created the expansion" and (2) "the trial court must re-open the record for additional fact finding to determine the types of cannons used at the Club prior to the expansion and that the court can only prohibit those types of cannons that were not used at the Club prior to the expansion." CP at 949.

The trial court ruled that, because the definition of "cannon" must be in terms that any ordinary person may reasonably understand, the definition would not consist of overly-technical terms or depend upon metrics or measurements not readily accessible to an ordinary person. Accordingly, the trial court enjoined the Club from "discharging cannons" and defined "cannon" as

> any non-handheld device from which a projectile may be fired by an explosive. A non-handheld device is a device that is designed and/or intended to be discharged

from a mounted position, such as on a carriage, pedestal, tripod, or similar apparatus. A non-handheld device does not include a mounted rifle or pistol.

CP at 952, 953.

The Club appeals.

## ANALYSIS

A. REOPENING THE RECORD

The Club argues that the trial court erred by denying its motion to reopen the record and conduct additional fact-finding before defining "cannons." We disagree.

We review a trial court's decision on reopening the record for a manifest abuse of discretion. *Sweeny v. Sweeny*, 52 Wn.2d 337, 339, 324 P.2d 1096 (1958). A trial court abuses is discretion when its decision "is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." *Kitsap Rifle* I, 184 Wn. App. at 302. A trial court necessarily abuses its discretion if its decision is based on an erroneous view of the law. *Tedford v. Guy*, 13 Wn. App. 2d 1, 13, 462 P.3d 869 (2020).

Here, *Kitsap Rifle* III's remand instructions expressly stated, in relevant part, that the trial court should "define the operative term 'cannons.'" *Kitsap Rifle* III, slip op. at 22. The Club acknowledges that the trial court's definition of "cannon" constitutes a legal conclusion, not a finding of fact. The *Kitsap Rifle* III court did not indicate that defining "cannons" was a factual issue for which taking evidence or finding additional facts would be necessary. Nor did the *Kitsap Rifle* III court state that certain cannons should be excluded from the definition.[8] It was well within

---

[8] In fact, the *Kitsap Rifle* III court held that the Club waived this argument. *Kitsap Rifle* III, slip op. at 15-16.

the trial court's discretion to define "cannon" based on the existing evidence in the record, including the photos of cannons posted online by the Club. Therefore, the trial court did not abuse its discretion by declining to reopen the record and conduct additional fact-finding before defining "cannons."[9]

B.      OVERBREADTH/TAILORING CHALLENGE

The Club argues that the trial court erred by defining "cannon" without tailoring the definition to the specific types of cannons that caused the sound expansion. The County argues that, based on the law of the case doctrine, the Club waived this argument. We agree with the County.

"[T]he law of the case doctrine applies to successive proceedings in the same case." *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 55, 366 P.3d 1246 (2015), *review denied*, 185 Wn.2d 1038 (2016). The doctrine "'stands for the general rule that a question of law decided by the [appellate] court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed on a second appeal when the facts and the questions of law presented are substantially the same.'" *Id.* at 54 (alterations in original) (internal quotation marks omitted) (quoting *In re Pooled Advocate Trust*, 2012 SD 24, ¶ 23, 813 N.W.2d 130, 139).

---

[9] We note that the Club moved to reopen the record so it could present testimony from witnesses regarding "certain types of cannons they observed being used at the Club's property that could not have caused houses to shake or otherwise cause a sound expansion." CP at 943. The Club sought to have the trial court exclude these devices from its definition of "cannon" but admitted that the devices were, indeed, cannons. In light of the Club's admission and *Kitsap Rifle* III's holding that the Club has waived the argument that the trial court erred by not clarifying which specific use of the cannons created an impermissible expansion of use, any evidence regarding the aural or physical impacts of these cannons could not have assisted the trial court in defining "cannons."

The law of the case doctrine provides that (1) a trial court ruling maintains binding force during later stages of the trial, (2) an appeals court ruling carries conclusive effects at trial on remand, and (3) an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. *Id.* at 56. While appellate courts have discretion in applying the law of the case doctrine, "[t]he same discretion is not afforded to the trial court on remand from the appellate court." *Id.* at 57.

The remand rule "'forbids . . . a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case.'" *Id.* at 56 (internal quotation marks omitted) (quoting *Municipality of San Juan v. Rullan*, 318 F.3d 26, 29 (1st Cir. 2003)). A trial court may not revisit any issues that it previously resolved or re-evaluate the merits of any issues resolved on appeal. *Id.* at 58.

The Club argues that the trial court erred by making no findings regarding which cannons constituted an expansion of use. But *Kitsap Rifle* III held that the Club had waived this argument. Slip op. at 15. Specifically, the *Kitsap Rifle* III court held:

> The June 2019 order found that "discharging cannons or causing exploding targets to explode" constituted an unlawful expansion of the Club's nonconforming use. CP at 446. The Club argues that the June 2019 order did not clarify which explosive devises and what specific use of the cannons and exploding targets created the expansion. We conclude that the Club waived this argument.

*Id.*[10] Because the *Kitsap Rifle* III court already determined that the Club has waived this argument and the Club has agreed that its use of cannons constituted an expansion of use, we apply the law of the case doctrine and decline to address the Club's argument.

---

[10] Throughout its briefing, the Club emphasizes in support of its argument that certain cannons should be excluded from the definition of "cannon," that we stated in *Kitsap Rifle* III that there are

15

Moreover, even if we exercised our discretion to address the Club's argument in this appeal, the Club's argument fails. Because the law of the case doctrine also applied to the trial court on remand, the trial court was bound by *Kitsap Rifle* III's holding that the Club waived this argument. *Lodis*, 192 Wn. App. at 56. Therefore, the trial court properly applied the holding in *Kitsap Rifle* III and did not err by declining to address the Club's argument that certain cannons should be excluded from the definition of "cannon."

The Club further argues that the "core holding" of the previous appeals is that "'the appropriate remedy involves <u>specifically</u> addressing the impermissible expansion of the Club's nonconforming use.'" Br. of Appellant 21-22 (emphasis in brief) (quoting *Kitsap Rifle* II, slip op. at 7). But "the Club agreed that the use of cannons . . . constituted an expansion of use." *Kitsap Rifle* III, slip op. at 16. Thus, an appropriate remedy would enjoin "the use of cannons." Therefore, the trial court did not err by defining "cannon" without excluding certain cannons from the definition.

---

many different types of "cannons," and that it is unclear what type of cannon the trial court was referencing. The Club misconstrues the *Kitsap Rifle* III opinion. And as discussed in this opinion, the Club specifically admitted "that the use of cannons . . . constituted an expansion of use." *Kitsap Rifle* III, slip op. at 16.

C.      VAGUENESS/AMBIGUITY CHALLENGE

The Club argues that the trial court's definition of "cannon" violates CR 65 because it is vague and ambiguous.  We disagree.

CR 65(d) provides that

[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.

Because CR 65(d) is identical to Fed. R. Civ. P. 65(d), we may use cases interpreting the federal rule as guidance in interpreting the Washington rule.  *All Star Gas, Inc., of Washington v. Bechard*, 100 Wn. App. 732, 736-37, 998 P.2d 367 (2000).

Fed. R. Civ. P. 65(d)'s specificity requirements are designed to prevent uncertainty and confusion and to avoid contempt citations based on orders too vague to be understood.  *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018).  An injunction must be specific and unambiguous so that "'an ordinary person reading the court's order [is] able to ascertain from the document itself exactly what conduct is proscribed.'"  *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (alterations in original) (quoting *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016)).  Injunctions do not violate Fed. R. Civ. P. 65(d) "'unless they are so vague that they have no reasonably specific meaning.'"  *Portland Feminist Women's Health Ctr. v. Advocs. for Life, Inc.*, 859 F.2d 681, 685 (9th Cir. 1988) (quoting *U.S. v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985)).

Here, the trial court defined "cannon" as

any non-handheld device from which a projectile may be fired by an explosive.  A non-handheld device is a device that is designed and/or intended to be discharged

17

from a mounted position, such as on a carriage, pedestal, tripod, or similar apparatus. A non-handheld device does not include a mounted rifle or pistol.

CP at 953.

The Club argues that an ordinary person cannot determine whether the device is a "mounted rifle or pistol." But ordinary people understand that both rifles and pistols are firearms designed to be fired as handheld devices and that mounting a rifle or pistol does not transform the rifle or pistol into a cannon.

The Club also takes issue with the part of the definition regarding the design and/or intent for the device to be discharged from a mounted position. The Club argues that an ordinary person is unable to ascertain the intentions of the designer and potential users. But a cannon's physical features make the intentions of the designer self-evident. Exhibits 113 and 131 show that a cannon's design may include features that make discharging the device while holding it infeasible, like an unwieldy size, shape, or heavy weight.[11] Or the design may plainly include a mount or other features for attaching a mount, such as the examples listed in the definition ("carriage, pedestal, tripod"). Further, the design may lack the physical features of handheld devices, such as handles, hand grips, or triggers that can be pulled with one's fingers. These physical features make apparent to ordinary persons that the device is meant to be discharged from a mounted position. Thus, an ordinary person seeking to use such a device will know from the injunction's language

---

[11] The Club argues that, because a person's ability to discharge a device by hand and absorb recoil depends on the person's size, strength, and skill, users are unable to discern whether a device is intended to be discharged from a mounted position. But the trial court's definition does not hinge upon the *ability* to fire the device by hand, but instead upon the device's *design or intent* to be discharged from a mounted position. Even if some cannons could conceivably be discharged by hand by certain individuals, other physical features of the cannon will demonstrate that the device is designed or intended to be discharged from a mounted position.

that the device falls within the definition of "cannon" and that use of the device is proscribed.

Accordingly, the trial court's definition of "cannon" does not violate CR 65(d).

D.      SANCTIONS

The County argues that the Club should be sanctioned and attorney fees awarded to the County under RAP 18.9(a). We disagree.

RAP 18.9(a) allows this court to order sanctions against a party who brings a frivolous appeal. We consider the following factors when determining whether an appeal is frivolous:

> "(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

*Espinoza v. Am. Com. Ins. Co.*, 184 Wn. App. 176, 202, 336 P.3d 115 (2014) (internal quotation marks omitted) (quoting *Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123, *review denied*, 98 Wn.2d 1004 (1982)). "RAP 18.9(a) does not speak in terms of filing one or more frivolous issues or assignments of error—only a frivolous appeal as a whole." *Lee v. Kennard*, 176 Wn. App. 678, 693, 310 P.3d 845 (2013).

While the Club attempts to reargue some previously determined issues as part of this appeal, the Club also raises new arguments related to the vagueness and ambiguity of the trial court's definition of "cannons." These arguments fall within the Club's right to an appeal and, when viewed in the context of the record and in favor of the appellant, do not make the Club's appeal wholly frivolous. Therefore, we deny the County's request for sanctions.

No. 57628-7-II

CONCLUSION

We affirm the trial court's Second Order but deny the County's request for RAP 18.9(a) sanctions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Veljacic, J.